J-S81016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1850 EDA 2016 |

Appeal from the Dispositional Order June 1, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-DP-0015013-2009

BEFORE:  BOWES, MOULTON, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY MOULTON, J.:                **FILED JANUARY 10, 2017**

B.S. ("Father") appeals from the order of the trial court entered on June 1, 2016, that adjudicated A.S. ("Child") dependent pursuant to 42 Pa.C.S. § 6302, and ordered that Child would remain in Father's home, with the Philadelphia County Department of Human Services ("DHS") directed to supervise the family.[1]  We affirm.

The trial court summarized the relevant factual and procedural history of this matter as follows.

> A.S. was born [in May 2003].  The family has a substantial DHS history.

---

* Former Justice specially assigned to the Superior Court.

[1] B.G. ("Mother") did not challenge the order by filing a separate appeal, nor did she file a brief in the instant appeal.

On September 5, 2006, the father and the mother were arrested and charged with drug offenses.

On May 26, 2008, the father entered a guilty plea to the drug charges.

On August 5, 2008, the father was sentenced to two to four years in prison.

On January 21, 2009, an adjudicatory hearing was held before the Honorable Alice B. Dubow.[2]  A.S. was adjudicated dependent and committed to the care of DHS.

On October 20, 2010, [P]ermanent Legal Custody (PLC) of the child was awarded to the paternal grandmother (PGM).[3]

_____

[2] Judge Dubow was sworn in as a member of this Court in January 2016, following her election to the Court in November 2015.  Judge Dubow is not involved in the review of this matter.

[3] This Court has stated:

[A] juvenile court may award permanent legal custody to a child's caretaker pursuant to Section 6351(a)(2.1) of the Juvenile Act.  This is an arrangement whereby a juvenile court discontinues court intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian.  Parental rights are not terminated.  *See In re H.V.*, 37 A.3d 588, 589 (Pa.Super.2012).  The custodian is typically provided a financial subsidy for the child by the local county children and youth agency.  The subsidy component is generally an integral component when permanent legal custody is considered a viable option.[]

A trial court may consider permanent legal custody, upon the filing of a petition by a county children and youth agency that alleges the dependent child's current placement is not safe, and the physical, mental, and moral welfare of the child would best be served if subsidized permanent legal custodianship (SPLC) were granted.  *See In re S.B.*, 208 Pa.Super. 21, 943 A.2d 973, 983–984

*(Footnote Continued Next Page)*

On October 21, 2015, DHS received a valid General Protective Services Report (GPS) alleging that the child had left the home of PGM on October 16, 201[5]. The report further alleged that PGM could no longer control the child's behavior.

On November 11, 2015, DHS received a valid GPS report alleging that the child had repeatedly run away from the home of PGM.

In November, 2015, the child began residing with the father[, where] she currently remains.

On March 29, 2016, the father petitioned the Domestic Relations Branch of the Philadelphia Family Court to modify/vacate the PLC order.[4]

On April 12[,] 2016, a special guardian (SG) hearing on the motion to modify/vacate the PLC was heard before Master Carol Carson. Master Carson ordered the PLC to stand and ordered DHS to file a dependen[cy] petition.

On April 28, 2016, the City Solicitor's office on behalf of DHS filed a dependency petition.

On May 4, 2016, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine vacated the PLC as to the PGM. Judge Irvine found that the child was residing with the father. The Court deferred the

_(Footnote Continued)_ ───────────

(2008). Upon receipt of this petition, the court must conduct a hearing and make specific findings focusing on the best interests of the child. **See id.** In order for the court to declare the custodian a "permanent legal custodian" the court must find that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare. **See id.**; **see also** 42 [Pa.C.S.] § 6351(f.1).

**In re S.H.**, 71 A.3d 973, 977-78 (Pa.Super. 2013).

[4] Father previously filed a petition to vacate or modify custody on December 20, 2013. On April 28, 2015, the trial court dismissed/discharged Father's petition.

adjudication until June 1, 2016. The father was referred to the Clinical Evaluation Unit (CEU) for a forthwith drug screen and monitoring with three random drug screens prior to the next court date.

On June 1, 2016, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine.

Tr. Ct. Op. ("Rule 1925(a) Op."), 7/18/16, at 1-2 (unpaginated) (footnote added).[5]

At the June 1, 2016 adjudicatory/dispositional hearing, DHS presented the testimony of Issair Santos-Torres, a DHS social worker. At the conclusion of the hearing, the trial court stated as follows:

THE COURT: Based on the testimony presented in court today, I do find that DHS has met their burden by clear and convincing evidence that the child is currently without proper parental care and control and DHS supervision. How old is the child?

[FATHER]: Thirteen.

[COUNSEL FOR FATHER]: She's thirteen.

THE COURT: If she was a little younger, I'd be removing the child because you're smoking weed. You got to stop while - it's like being on probation. So I'm going to just leave it at that. You - you need to come down for the randoms. And you need to stop smoking weed.

N.T., 6/1/16, at 15.

_____

[5] This Court has found that a parent may petition the trial court "to regain custody of a child who is the subject of an award of permanent legal custody." *In re S.H.*, 71 A.3d at 982. Further, this Court expressed approval for assignment of such petitions to the Juvenile Branch of the Philadelphia trial court, rather than the Domestic Relations Branch, as the Juvenile Branch would have had experience with the family and, in the Juvenile Branch, DHS would be a party. *Id.* at 983.

On that same date, June 1, 2016, Judge Irvine entered the order that adjudicated Child dependent, and ordered that Child was to remain in Father's home, with DHS supervision. The trial court stated its adjudication of dependency and disposition in its order as follows:

> **AND NOW**, this 1st day of June, 2016, after consideration of the petition presented by the Philadelphia Department of Human Services, it is ORDERED that the child is found, by clear and convincing evidence, to be a Dependent Child pursuant to the Pennsylvania Juvenile Act at 42 Pa.C.S. § 6302 'Dependent Child'.
>
> **FINDINGS OF FACT**
>
> The findings of fact are set forth in the *record of this case*.
>
> **REASONABLE EFFORTS**
>
> Further, the Court hereby finds that to allow this child to remain in the home would NOT be contrary to the child's welfare, and that the Philadelphia Department of Human Services made Reasonable Efforts to prevent or eliminate the need for removal of this child from the home.
>
> **CUSTODY/PLACEMENT**
>
> Legal Custody of the Child shall remain with the Father, [B.S.]. Physical Custody of the Child shall remain with the Father, [B.S.].
>
> **CURRENT PLACEMENT – Child's Safety**
>
> The child is safe in the current placement setting. Safety as of 5/6/16
>
> **CURRENT PERMANENT PLACEMENT PLAN**
>
> The current placement goal for the child is [to] remain with the parent or guardian.
>
> **PROGRAMS/INITIATIVES**
>
> The court recognizes the following initiatives or programs have been or will be used:

Family Group Decision Making with individual and family.

. . .

**FINDINGS/ORDERS**

THE COURT FURTHER FINDS:

Father and Child attend[] Therapy at the Tree Of Life.

THE COURT FURTHER ORDERS: ADJ DEP - DHS IS TO SUPERVISE

Single Case Plan meeting to be held within 20 days. DHS exhibit #1 is presented to the court and entered into evidence. Father is re-referred to CEU for a forthwith screen and three random drug screens prior to the next court date. Father to provide CEU with presciptions.[sic] Father and Child are referred to BHS for monitoring. Child is to continue to attend school on a mandatory basis.

**NEXT SCHEDULED COURT DATE(S)**

Next Scheduled Court Date: - CUA Initial Perm. Hearing - 08/18/2016 - 1:30PM -1501 Arch Street – Courtroom 4B

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

Tr. Ct. Order, 6/1/16, at 1-2 (italics added; bold in original).

On June 16, 2016, Father timely filed a notice of appeal, together with a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b).

On appeal, Father raises two questions for our review:

1. Whether the trial court erred by not specifying, as required by rules 1408 and 1409 of the PA Rules of Juvenile Court Procedure, which specific averments in the petition were proved by clear and convincing evidence (Rule 1408) and by failing to include in the Order adjudicating the subject minor dependent, under 42 Pa.C.S.A. §6302(1), the specific factual findings upon

- 6 -

which the court's decision was based (Rule 1409{C}{1}{a}{b}) [sic][?]

2. Whether the trial court erred in adjudicating the subject minor dependent under 42 Pa.C.S.A. §6302(1) and finding there was clear and convincing evidence that said minor lacked proper parental care and control[?]

Father's Br. at 4.[6]

We will address Father's second issue first. The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows:

> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

*In Interest of: L.Z.*, *A Minor Child*, 111 A.3d 1164, 1174 (2015). As the Pennsylvania Supreme Court has stated:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are

_____

[6] Both DHS and Child informed this Court that they would not be filing a brief in this matter. *See* Notice to the Court, filed 9/6/2016; Letter from DHS to Joseph D. Seletyn, Esquire, dated and filed 9/8/2016.

> supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [] 650 A.2d 1064, 1066 ([Pa.] 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

Section 6302 of the Juvenile Act defines a "dependent child" as:

> A child who:
>
> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302.

In *In re G., T.*, this Court further explained the definition of "dependent child":

> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

845 A.2d 870, 872 (Pa.Super. 2004) (internal quotations and citations omitted); *see also In re J.C.*, 5 A.3d 284, 289 (Pa.Super. 2010). Additionally, we note that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G., T.*, 845 A.2d at 872.

With regard to a dependent child, our Supreme Court has explained:

> A court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*In re M.L.*, 757 A.2d 849, 850-51 (Pa. 2000); *accord In re D.A.*, 801 A.2d 614, 617 (Pa.Super. 2002) (*en banc*).

Father argues the trial court erred in finding a lack of proper parental care and control, and, thus, adjudicating Child dependent under 42 Pa.C.S. §6302(1). Father's Br. at 9-10. Father asserts that the testimony of DHS's sole witness, its caseworker, Ms. Torres-Santos, established that Child was doing well in Father's care, and that Father was meeting Child's needs. Specifically, Father states that the evidence showed that he was meeting Child's needs with regard to school as well as therapy, which included Child's individual therapy, Father's individual therapy, and seeking family therapy. Father claims that he was also meeting curfew, and obtaining medical care for Child. Father's Br. at 9.

Moreover, Father alleges that the evidence established that his home was appropriate, in that he had ample food, all utilities were operable, and he provided proper sleeping arrangements. He asserts that, not only was Child not lacking proper care and control, but, rather, the care and control

that he was providing for Child was exemplary, and was meeting all of her needs, including her specialized mental health needs. *Id.* Additionally, Father states that the "record of the case" which the trial court referenced in its June 1, 2016 order as the basis for finding a present inability to parent, shows that Father was a consistent, stable, and loving parent throughout the case. *Id.* at 10. Father claims that he made only one parenting misstep in the history of the case, and that he corrected it in January of 2010. Father alleges that he was the parent to whom the court consistently looked to parent, care for, and be the custodian of Child. *Id.* He urges that the DHS dependency petition did not allege a "present inability" to parent, and that there was no testimony that supported a finding of "present inability." *Id.*

Finally, Father asserts that the trial court committed an error and abuse of its discretion by not making specific findings of fact and adjudication based upon his "present inability" to parent with a lack of DHS supervision. He claims that the record was devoid of any testimony in support of such a finding, and that the uncontroverted testimony showed that he was meeting Child's needs overall, addressing her specific mental health needs, and that Child was doing very well in his care.

In its Pa.R.A.P. 1925(a) opinion, the trial court explained its finding of dependency as follows:

> In the instant case, the DHS social worker testified that the father had a history of substance abuse. (N.T., 6-1-16, p. 7). On May 4, 2016, the father was ordered by the [trial court] to submit to a forthwith drug screen.

- 10 -

Furthermore, he was ordered to submit to three random drug screens. The father did not complete the forthwith drug screen on May 4, 2016. The [trial court] presumes that the forthwith drug screen is positive for drugs/alcohol if the father fails to complete it on the day it was ordered. The father did complete one random drug screen on May 17, 2016. (N.T., 6-1-16, p. 8). The father's May 17, 2016 drug screen was positive for marijuana. (6-1-17 [sic], DHS Exhibit 1). Marijuana is a controlled drug/substance in the Commonwealth of Pennsylvania pursuant to 35 P.S. §780-104. The father's use of the illegal drug marijuana, [sic] is conduct which places the health, safety and welfare of the child a risk.

The Trial Court found by clear and convincing evidence that the child is currently without proper parental control. Therefore, the child was adjudicated dependent and DHS was ordered to supervise the family.

**Conclusion:**

For the preceding reasons, the court finds that the Department of Human Services met its statutory burden by clear and convincing evidence that A.S. is a Dependent Child pursuant to the Pennsylvania Juvenile Act at 42 Pa.C.S. § 6302 'Dependent Child."[sic]

1925(a) Op., at 3 (unpaginated) (bold in original). We conclude that this finding of dependency was not an abuse of discretion.

While the record would have supported a finding that Child was not dependent, "an appellate court must resist the urge to second guess the trial court," *see In re R.J.T.*, 9 A.3d at 1190, where, as here, the evidence also supports the trial court's finding that, because of Father's substance abuse history and his present marijuana use, there was a need to protect Child by adjudicating her dependent and imposing DHS supervision. None of the cases upon which Father relies holds to the contrary, nor could we locate

any such case through our research. We, therefore, will defer to the trial judge, who had an opportunity to observe the parties, and find that the trial court did not abuse its discretion.[7] **See In re R.J.T.**, 9 A.3d at 1190.

Turning to Father's first issue, he claims that the trial court erred by not specifying which specific averments in the petition were proved by clear and convincing evidence and by failing to include in the Order adjudicating the subject minor dependent, under 42 Pa.C.S. §6302(1), the specific factual findings upon which the court's decision was based.

Initially, we find that Father waived this issue for failure to preserve it in his concise statement. **See Krebs v. United Refining Co. of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in her brief on appeal).

---

[7] It appears that the parties involved hoped the supervision would be temporary. At the hearing, DHS requested that Father be "monitored for at least another court cycle," N.T., 6/1/2016, at 14, and the Child Advocate requested that the decision be "defer[red] for another 30 days for the order for Father with CEU to stand; that he go for three randoms, and if those come back negative and/or with prescription coverage we would have no problem dismissing it at that time." **Id.** The trial court scheduled another hearing for August 18, 2016. **Id.** at 16. We do not know the outcome of that, or any additional, hearings.

Further, had Father not waived his first issue, we would conclude it lacks merit. The Pennsylvania Rules of Juvenile Court Procedure upon which Father relies provide, in pertinent part, as follows:

Rule 1408. Findings on Petition

The court shall enter findings, within seven days of hearing the evidence on the petition or accepting stipulated facts by the parties:

(1) by specifying which, if any, allegations in the petition were proved by clear and convincing evidence; and

(2) its findings as to whether the county agency has reasonably engaged in family findings as required pursuant to Rule 1149.

Pa.R.J.C.P. 1408.

Pennsylvania Rules of Juvenile Court Procedure 1409, in turn, provides, in pertinent part:

Rule 1409. Adjudication of Dependency and Court Order

**A. Adjudicating the child dependent.** Once the court has made its findings under Rule 1408, the court shall enter an order whether the child is dependent.

(1) *Dependency*. If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed to a dispositional hearing under Rule 1512.

* * *

**C. Court order.** The court shall include the following in its court order:

(1) A statement pursuant to paragraph (A):

(a) as to whether the court finds the child to be dependent from clear and convincing evidence;

> (b) including the specific factual findings that form the bases of the court's decision.

Pa.R.J.C.P. 1409 (bold in original).

The trial court's June 1, 2016 order, entered on the same date as the adjudicatory/dispositional hearing, adequately explained that the trial court was finding Child dependent based on the record in the case, and was ordering Child to remain in Father's home, subject to DHS supervision.[8] At the conclusion of the hearing, the trial court explained its findings and its decision on the record. Thus, the trial court informed Father of its reasoning supporting its decision, and Father knew that reasoning in challenging it on appeal. Accordingly, we would find that the issue lacks merit in any event.

Order affirmed.

_____

[8] Here, the risk to Child's health, safety, and welfare from Father's substance abuse was the main issue. We remind the trial court that, especially where there are multiple concerns in a dependency case, pursuant to Pa.R.J.C.P 1409C.(1)(b), the court should endeavor to enumerate the specific factual findings that form the bases for its decision in greater detail. In fact, in a custody case, we have held that the order must be separate from the transcript to satisfy the requirements of Pa.R.C.P. 1915.10. Decision. Order. *See R.L.P v. R.F.M.*, 110 A.3d 201, 204 (Pa. Super. 2015). The present matter is distinguishable from *R.L.P.* because the trial court entered an order separate from the transcript. Although the order is separate from the transcript, a review of the transcript is required to understand the specific factual basis for the court's finding. This manner of proceeding does not assist appellate review.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/10/2017